## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

HYDRAFACIAL LLC,

        Plaintiff,

        v.

CANDELA CORPORATION, and
TERMOSALUD S.L.,

        Defendants.

Case No._____

**COMPLAINT FOR PATENT
INFRINGEMENT**

**DEMAND FOR JURY TRIAL**

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff HydraFacial LLC ("Plaintiff" or "HydraFacial"), by and through its undersigned counsel, hereby files this Complaint against Defendant Candela Corporation ("Candela") and Defendant TermoSalud, S.L. ("TermoSalud") (collectively, "Defendants") for infringement of the United States patents identified herein, and alleges as follows:

## NATURE OF ACTION

1.    This civil action arises under the patent laws of the United States, 35 U.S.C. §§ 100 *et seq*. in which HydraFacial asserts that Defendants infringe U.S. Patent Nos. 9,550,052 ("'052 Patent"); 11,865,287 ("'287 Patent"); 11,446,477 ("'477 Patent"); and 12,053,607 ("'607 Patent") (collectively, "Asserted Patents"). HydraFacial files this action to stop Defendants' infringement of the Asserted Patents and to obtain all appropriate relief.

## THE PARTIES

2.    Plaintiff HydraFacial LLC is a California Limited Liability Company with its principal place of business at 2165 E. Spring Street, Long Beach, California 90806. HydraFacial was formerly known as Edge Systems LLC.

3.      On information and belief, Defendant Candela Corporation is a Delaware Corporation with its principal place of business at 251 Locke Drive, Marlborough, Massachusetts 01752.

4.      On information and belief, Defendant TermoSalud S.L. is a Spanish Limited Liability Company with its principal place of business at C. de Ataúlfo Friera Tarfe, 8, Gijon-Oeste, 33211 Gijón, Asturias, Spain.

## THE ASSERTED PATENTS

5.      On January 24, 2017, the USPTO duly and lawfully issued the '052 Patent, titled "CONSOLE SYSTEM FOR THE TREATMENT OF SKIN."  A true and correct copy of the '052 Patent is attached hereto as **Exhibit 1**.

6.      On January 9, 2024, the USPTO duly and lawfully issued the '287 Patent, titled "DEVICES AND METHODS FOR TREATING SKIN."  A true and correct copy of the '287 Patent is attached hereto as **Exhibit 2**.

7.      On September 20, 2022, the USPTO duly and lawfully issued the '477 Patent, titled "DEVICES AND METHODS FOR TREATING SKIN."  A true and correct copy of the '477 Patent is attached hereto as **Exhibit 3**.

8.      On August 6, 2024, the USPTO duly and lawfully issued the '607 Patent, titled "DEVICES AND METHODS FOR TREATING SKIN."  A true and correct copy of the '607 Patent is attached hereto as **Exhibit 4.**

9.      HydraFacial is the owner of all right, title, and interest in the Asserted Patents. Accordingly, HydraFacial is the patentee for purposes of standing to assert the Asserted Patents in this action under 35 U.S.C. § 281.

## JURISDICTION AND VENUE

10.    This Court has subject matter jurisdiction over HydraFacial's patent infringement claims pursuant to 28 U.S.C. §§ 1331 (federal question) and 1338 (action arising under an Act of Congress relating to patents) because this action arises under the Patent Laws of the United States, Title 35 of the United States Code.

11.    This Court has personal jurisdiction over Candela because, on information and belief, it is a Delaware Corporation that maintains continuous, systematic, and substantial contacts with the State of Delaware.  Candela maintains a registered agent with the Corporation Trust Company at 1209 Orange Street, Wilmington, Delaware 19801, to receive service of process on its behalf.  Therefore, the Court's exercise of personal jurisdiction over Candela is appropriate under the applicable laws and would not offend traditional notions of fair play and substantial justice.

12.    This Court may exercise jurisdiction over TermoSalud pursuant to Fed. R. Civ. P. 4(k)(2) because: (a) HydraFacial's claims arise under federal law; (b) TermoSalud is a foreign defendant not subject to personal jurisdiction in the courts of any state; and (c) TermoSalud has sufficient contacts with the United States as a whole, including, but not limited to, developing, manufacturing, marketing, selling, distributing, and/or importing the Accused Product throughout the United States, such that this Court's exercise of jurisdiction over TermoSalud satisfies due process.

13.    Pursuant to 28 U.S.C. §§ 1391 and 1400(b), venue is proper in this District as to Defendants because (a) Candela is organized under the laws of Delaware and resides in this District; and (b) TermoSalud is a company organized and existing under the laws of Spain and may be sued in any judicial district.

## BACKGROUND

14.    HydraFacial is a worldwide leader in the design, development, manufacture, and sale of high-quality skin resurfacing and rejuvenation systems, including hydrodermabrasion systems. These systems rejuvenate skin by cleaning and exfoliating the skin surface, extracting debris from pores, and nourishing the skin's surface with therapeutic solutions that moisturize and protect the treated skin surface. HydraFacial markets and sells these systems throughout the United States to end users such as dermatologists, plastic surgeons, cosmetic physicians, and aestheticians at medical spas.

15.    HydraFacial's latest flagship system is its revolutionary HydraFacial Syndeo® system, which is the premier hydrodermabrasion system sold in the United States. HydraFacial's evolutionary HydraFacial Syndeo® system is protected by numerous United States patents. In addition to the Syndeo™ system, HydraFacial has designed, developed, manufactured and sold other patented hydrodermabrasion systems, including: the HydraFacial MD®, the HydraFacial® Tower™, the HydraFacial® Allegro™, the HydraFacial® Wave™, the HydraFacial® Elite™, HydraFacial® Nectre™ and the HydraFacial® Core™ systems (collectively, "HydraFacial® Systems").

16.    Defendants are in the business of sourcing and selling aesthetic medical devices, including hydrodermabrasion devices that compete with the HydraFacial® Systems.

17.    TermoSalud manufactures, imports, and sells a dermo-facial device called the deep2™ system ("deep2"). **Ex. 5** at 1. TermoSalud offers medical device manufacturing services to third parties. *Id*.

18.    Candela sells a hydrodermabrasion system known as the Glacē™ Solution ("Glacē"). Candela offers the Glacē for sale on its website, as depicted below. *See e.g.,* **Ex. 6**

(Candela's webpage for Glacē system); **Ex. 7** (Candela Glacē™ Treatment Press Release (Mar. 7, 2025)).

19.     Candela exhibited the Glacē system at the American Academy of Dermatology Association's 2025 Annual Meeting in Orlando, Florida from March 7-11, 2025.  *See* **Ex. 9** at 7-10 (Candela Medical sharing on LinkedIn, on or around March 8th, that it was exhibiting and posting pictures of the Glacē system).



*See* **Ex. 15** (image of the Glacē system from the **Ex. 9** post).

20.     On information and belief, the Glacē system and the deep2 system ("the Accused Products") are the same hydrodermabrasion device with different branding.  *See* **Ex. 6** at 1 (citing the deep2 user manual to support claims about the Glacē); **Ex. 15** (showing the Glacē system displaying an interface that says deep2 and TermoSalud).  On information and belief, Candela sells the deep2 system under the Glacē brand name.  **Ex. 6** at 1 ("Glacē treatments [are] available with the deep2™ system."); *see* **Ex. 17** at (February 28, 2025 Instagram post from Candela Medical)

5

(advertising the Glacē system in a post showing a deep2 system with TermoSalud marking being unpacked at a Candela facility) and **Ex. 16** (accompanying video).

21.    Candela and TermoSalud used, imported, offered for sale, and/or sold the Accused Products in the United States. *Id.*

22.    Candela markets and sells the Accused Products throughout the United States to end users, such as dermatologists, plastic surgeons, cosmetic physicians and aestheticians at medical spas. Candela also offers replacement components, repairs, warranties, and training services for end users. On information and belief, Candela sells the Accused Products internationally through local distributors. *See generally* **Ex. 14** (advertising the Accused Products in Eastern Europe using Candela branding).

23.    The Accused Products are hydrodermabrasion devices used for treating the skin surface of a patient. The Accused Products, as depicted below, have a handpiece that includes a tip at the end of the handpiece ("Handpiece"). *See* **Ex. 6** at 1; **Ex. 8** at 00:02-00:04, 00:08-00:10. The GlacēVac provides the hydrodermabrasion functionality of the Glacē. **Ex. 6** at 1.



*See* **Ex. 14** at 1.

24.     The Handpiece includes a DiamondGlacē tip ("Tip") that contains raised abrasive edges to exfoliate the skin, and several openings for suction to simultaneously cleanse the skin. *See* **Ex. 6** at 1.  On information and belief, the Handpiece can be attached and detached from the Glacē.  *See* **Ex. 6** at 1 (describing the Accused Products' "single-use tips"); **Exhibit 8** (Training With Glacē Video (depicted below)).

7




*See e.g.,* **Exs. 8**, **12**.



*See* **Ex. 6** at 2 (describing "Hydrodermabrasion with diamond tips").

25.    The Accused Products include a manifold and a console that allows end users to select the hydrodermabrasion functionalities, including controlling the selection of solutions, flow of solutions, and vacuum suction.  The Accused Products include a vacuum source that creates suction for the extraction and exfoliation of the patient's skin.  Candela refers to this vacuum source as the GlacēVac™ closed vacuum system ("GlacēVac").  **Ex. 6** at 1.  The vacuum source

"[a]llows for simultaneous extraction and suction to cleanse skin while infusing serums for radiant, glass-like clarity." *Id.*



*See* **Ex. 14** at 1.



*See* **Ex. 12** at 00:12.

26.    The handpiece of the Accused Products is connected to the console via tubing. One end of the tubing is connected to the handpiece, and the other end couples to the console.




*See* **Ex. 14** at 2; **Ex. 16** at 00:25.

27.    On information and belief, the tubing includes at least a first conduit for delivery of serums and a second conduit for extraction of debris. *See* **Ex. 6** at 1 (providing that the GlacēVac™ closed vacuum system "[a]llows for simultaneous extraction and suction to cleanse skin while infusing serums for radiant, glass-like clarity."); *see id.* ("GlacēVac™ closed vacuum technology enhances hydrodermabrasion by combining exfoliation with serum delivery.").

28.    The Accused Products include fluid containers that hold serums for treating the skin of a patient. *See* **Ex. 6** at 1 (describing a "two-phase serum treatment"). On information and belief, the Accused products include a waste container inside the console. *See* **Ex. 13** at 3 (showing waste from a Glacē treatment).



29.    The Accused Products deliver fluid from treatment solution containers to the skin. Candela offers for sale and sells customizable treatment solutions to the Glacē customers and end users. *See* **Exs. 6, 8, 10-12, 14, 15**.



30.    Candela markets the Accused Products online, including social media platforms, such as Instagram, Twitter, Facebook and LinkedIn, and uses brand representatives to advertise and sell its products and services.  *See* **Ex. 9**, Candela Glacē™ Treatment Marketing Webpages.  In addition, Candela and its employees and affiliated medical spas have posted several instructive posts and videos on social media platforms.  *See e.g.,* **Ex. 10**, Candela Glacē™ Treatment Instructive Webpages; **Ex. 11,** Candela Glacē™ Treatment Instructive Videos; **Ex. 12**, Candela Glacē™ Treatment Customer Videos; **Ex. 13**, Candela Glacē™ Treatment Customer Marketing Posts.

31.    On information and belief, Candela has offered instructional manuals, trainings, and demonstrations on the use of the Accused Products to customers, end users and others as early as December 2024, and continues to do so.  *See* **Exs. 11-12**.  In doing so, Candela has used the Glacē to at least encourage, demonstrate, and otherwise direct the operation of the Accused Products by its customers, end users and others.  *Id.*

32.    On February 28, 2025, Candela received a Cease & Desist Letter from HydraFacial notifying Candela of its infringement of the Asserted Patents.  *See* **Ex. 18**, Cease & Desist Letter (Feb. 28, 2025).  Candela responded to HydraFacial on March 12, 2025 and acknowledged HydraFacial's claim in its February 28, 2025 Letter that Candela has infringed the Asserted Patents.  Thus, at least as of February 28, 2025, Candela has had actual knowledge of the Asserted Patents.

33.    TermoSalud had actual knowledge of the Asserted Patents at least as of the filing date of this Complaint.

34.    Defendants have infringed and continue to infringe the Asserted Patents. Defendants know, and knew, their actions constituted and continue to constitute, infringement of the Asserted Patents.

35.    HydraFacial has never authorized Candela to make, use, import, offer for sale, and/or sell the Accused Products or any components thereof that perform the accused functionalities.

36.    HydraFacial has never authorized TermoSalud to make, use, import, offer for sale, and/or sell the Accused Products or any components thereof that perform the accused functionalities.

37.    Each of the Defendants' acts of infringement are and were willful, intentional, and deliberate. Defendants have infringed and continue to infringe each of the Asserted Patents with reckless disregard for Plaintiff's patent rights. Defendants know, or should know, and knew, or should have known, that their actions constituted and continue to constitute infringement of the Asserted Patents.

## COUNT I
### Infringement of U.S. Patent No. 9,550,052

38.    HydraFacial incorporates by references and realleges the preceding paragraphs as if set forth fully herein.

39.    Defendants knowingly and intentionally infringed and continues to infringe the '052 Patent under 35 U.S.C. § 271(a) through, for example, the manufacture, use, sale, offer for sale, and/or importation into the United States of the Accused Products.

40.    For example, as set forth in the claim chart below, the Glacē system infringes at least Claim 1 of the '052 Patent.

| Claim Language | Accused Product |
|---|---|
| 1[pre]: A system for performing a skin treatment procedure, the system comprising: | To the extent that the preamble is limiting, the Glacē is a system for performing a skin treatment procedure.<br><br>Candela has marketed the Glacē treatment as a "professional skin treatment" and "innovative skincare solution." *See* **Ex**. **6** at 1; *see also* **Exs. 7, 9**. |
| 1[a][i]: a console including a manifold, | As shown in the image below, the Glacē comprises a console including a manifold:<br><br><br><br>*See* **Ex. 14** at 2.<br><br>The manifold disclosed in the '052 Patent is "a manifold system 24 that holds containers 26 containing treatment fluids." '052 Patent at 14:26–28. The Glacē has a manifold structure in fluid communication with the fluid containers containing fluid treatment material. |
| 1[a][ii]: the manifold being in fluid communication with a first fluid container and at least a second fluid container, | The manifold of the Glacē is in fluid communication with a first fluid container and at least a second fluid container.<br><br>As shown in the photo below, the fluid containers couple to the manifold of the Glacē: |

| Claim Language | Accused Product |
|---|---|
| |  *See* **Ex. 14** at 1. According to Candela's Glacē webpage, under the section "How It Works," the Glacē "integrates cutting-edge features that work together to achieve visible, transformative results," including "hydrodermabrasion with diamond tips" that "gently cleanses, exfoliates and replenishes the skin" and a "GlacēVac™ closed vacuum system" that allows for simultaneous extraction and suction to cleanse skin while infusing serums for radiant, glass-like clarity." **Ex. 6** at 1; *see e.g.*, **Exs. 7, 9, 12 & 13**. The fluid containers couple to the manifold, and the fluid in the containers is delivered to the skin of a patient when coupled to the console, and the manifold is in fluid communication with a first fluid container and at least a second fluid container. |
| 1[a][iii]: the first fluid container and the at least the second fluid container being configured to contain a treatment material for a skin treatment procedure, wherein the treatment material comprises a liquid | The first fluid container and the at least the second fluid container of the Glacē are configured to contain a treatment material for a skin treatment procedure, wherein the treatment material comprises a liquid. Candela touts its Glacē system as a "comprehensive skin purifying solution" utilizing "advanced hydrodermabrasion" to provide a "customizable" skin care treatment. *See* **Ex. 6** at 1. Moreover, Candela's Glacē webpage states that the Glacē "integrates cutting-edge features that work together to achieve visible, transformative results," including "hydrodermabrasion with diamond tips" that "gently cleanses, exfoliates and replenishes the skin" and a "GlacēVac™ closed vacuum system" that allows for simultaneous extraction and suction to cleanse skin while infusing serums for radiant, glass-like clarity." *Id*; *see e.g.*, **Exs. 7, 9, 12, 13**. Candela's Glacē webpage also states that a two-phase serum treatment is used. **Ex. 6** at 1. |

| Claim Language | Accused Product |
|---|---|
| 1[b]: a handpiece assembly comprising a tip, the tip being configured to contact a skin surface of a subject; | As shown in the image below, the Glacē includes a handpiece assembly comprising a tip, the tip being configured to contact a skin surface of a subject. <br><br>  <br><br> *See* **Ex. 14** at 1. <br><br> The Glacē handpiece has a tip attached that is configured to contact a skin surface of a subject, as shown below. <br><br>  <br><br> *See e.g.,* **Exs. 8**, **12**. |

| Claim Language | Accused Product |
|---|---|
| | 

*See* **Ex. 14** at 2.

Moreover, Candela's Glacē webpage, under the section "How It Works," states the Glacē comprises a hydrodermabrasion handpiece with "diamond tips" that gently cleanse, exfoliate, and replenish skin with precision-engineered, single-use diamond tips. *Id*. |
| 1[c]: a supply conduit placing the manifold of the console in fluid communication with the handpiece assembly, wherein a distal end of the supply conduit is configured to couple to the handpiece assembly; | As shown in the image below, the Glacē comprises tubing that includes a first conduit that connects the manifold of the console in fluid communication with the handpiece assembly, wherein the distal end of the supply conduit is configured to couple to the handpiece assembly.

*See* **Ex. 14** at 1.

The supply conduit, *e.g.* the first conduit of the tubing, is in fluid communication with the manifold via a coupling to the console, and the supply conduit also couples to the handpiece assembly. *See id*. |

| Claim Language | Accused Product |
|---|---|
| 1[d]: wherein the manifold is configured to control a flow of treatment material from the first fluid container and at least the second fluid container through the supply conduit; and | The Glacē manifold is configured to control a flow of treatment material from the first fluid container and at least the second fluid container through the supply conduit.<br><br>The supply conduit is in fluid communication with the manifold via a coupling to the console shown below, and the supply conduit also couples to the handpiece assembly:<br><br><br><br>*See* **Ex. 14** at 1.<br><br>According to Candela's Glacē webpage, under the section "How It Works," the Glacē "integrates cutting-edge features that work together to achieve visible, transformative results," including "hydrodermabrasion with diamond tips" that "gently cleanses, exfoliates and replenishes the skin" and a "GlacēVac™ closed vacuum system" that allows for simultaneous extraction and suction to cleanse skin while infusing serums for radiant, glass-like clarity." **Ex. 6** at 1; *see e.g.*, **Exs. 7, 9, 12 & 13**. The containers are coupled to the manifold, and the fluid in the containers is delivered to the skin of a patient through the supply conduit such that the manifold is configured to control a flow of treatment material from the first fluid container and at least the second fluid container through the supply conduit. |
| 1[e]: a vacuum source; | The Glacē comprises a vacuum source.<br><br>According to Candela's Glacē webpage, the Glacē contains a "GlacēVac™ closed vacuum system" that allows for simultaneous |

| Claim Language | Accused Product |
|---|---|
| | extraction and suction to cleanse skin while infusing serums for radiant, glass-like clarity." **Ex. 6** at 1; *see e.g.*, **Exs. 7, 9, 12 & 13**. |
| 1[f]: a waste conduit in fluid communication with the tip of the handpiece assembly to remove waste away from a skin surface of a subject during a skin treatment procedure, wherein the waste conduit is operatively coupled to the vacuum source; and | The Glacē system comprises a waste conduit, e.g. a second conduit in the tubing, in fluid communication with the tip of the handpiece assembly to remove waste away from a skin surface of a subject during a skin treatment procedure, wherein the waste conduit is operatively coupled to the vacuum source.<br><br>As shown in the photo below, the Glacē system has a waste conduit, e.g. the second conduit in the tubing, that is in and a tip of the handpiece assembly in fluid communication.<br><br><br><br>*See* **Ex. 14** at 1.<br><br>According to Candela's Glacē webpage, under the section "How It Works," the Glacē "integrates cutting-edge features that work together to achieve visible, transformative results," including "hydrodermabrasion with diamond tips" that "gently cleanses, exfoliates and replenishes the skin" and a "GlacēVac™ closed vacuum system" that allows for simultaneous extraction and suction to cleanse skin while infusing serums for radiant, glass-like clarity." **Ex. 6** at 1; *see e.g.*, **Exs. 7, 9, 12 & 13**. The containers are coupled to the manifold, and the fluid in the containers is delivered to the skin of a patient through the supply conduit such that the manifold is configured to control a flow of treatment material from the first fluid container and at least the second fluid container through the supply conduit. |

| Claim Language | Accused Product |
|---|---|
| 1[g]: wherein the system is configured to permit a user to select the treatment material from the first fluid container or the at least second fluid container to be delivered through the supply conduit to the handpiece assembly; and | As shown in the photo below, the Glacē is configured to permit a user to select the treatment material from the first fluid container or the at least second fluid container to be delivered through the supply conduit to the handpiece assembly. The Glacē touchscreen contains icons that allow the user to select the particular treatment material to be delivered through the supply conduit to the handpiece assembly: <br><br>  <br><br> *See* **Ex. 12** at 00:12; *see also* **Ex. 12** (end-users selecting container icons). <br><br> The Glacē touchscreen contains icons that allow the user to select the particular treatment material to be delivered through the supply conduit to the handpiece assembly. *See* **Ex. 12** at 00:10–00:12; *see also* **Ex. 14** at 2. |
| 1[h]: wherein, when the vacuum source is activated and the tip contacts the skin surface, a suction force is created within the waste conduit and along the tip, thereby removing waste from the skin surface via the waste conduit while drawing treatment material from the first fluid container or the second fluid container to | When the Glacē vacuum source is activated and the tip contacts the skin surface, a suction force is created within the waste conduit and along the tip, thereby removing waste from the skin surface via the waste conduit while drawing treatment material from the first fluid container or the second fluid container to the tip via the supply conduit. **Ex. 6** at 1 (stating that the vacuum source "[a]llows for simultaneous extraction and suction to cleanse skin while infusing serums"). <br><br> Candela has stated that the Glacē contains "precision engineered single-use tips" for exfoliation that are used on conjunction with its "GlacēVac™ closed vacuum technology" which "enhances hydrodermabrasion by combining exfoliation with serum delivery." |

| Claim Language | Accused Product |
| --- | --- |
| the tip via the supply conduit. | *See* **Ex. 6** at 1; *see also* **Ex. 7** (describing the Glacē components generally). |

41.     On information and belief, the deep2 system is identical to the Glacē system and infringes the '052 Patent in the same manner as the Glacē system. *See* **Ex. 6** at 1 ("Glacē treatments [are] available with the deep2™ system"); **Ex. 15** (showing the Glacē system with a deep2 user interface and a TermoSalud logo).

42.     On information and belief, Defendants make, import, offer for sale, and sell in the United States, and continues to do so, the Accused Products in a manner that infringes the '052 Patent, including for at least the reasons discussed above.

43.     On information and belief, Defendants have also induced and/or are inducing the infringement of the '052 Patent by marketing, offering for sale, and selling the infringing Glacē system and the infringing deep2 system, and by continuing to make, import, offer for sale, and sell the infringing Glacē system and the infringing deep2 system. *See e.g.,* **Exs. 8-12**. The Accused Products—as provided by Defendants to their customers, end users, and others—and used as intended and instructed by Defendants, infringes the '052 Patent. Defendants evinced the specific intent for their customers, end users, and others to infringe the '052 Patent and actively induced their infringing acts through its provision of marketing, product information, and instructional materials that encourage, demonstrate, and otherwise direct such infringement. *See id.* Further, customers, end users, and others have assembled and/or used the Accused Products in a manner that infringes the '052 Patent and continue to do so. *See id.*

44.     Defendants also had knowledge of the '052 Patent and that the Accused Products infringe the '052 Patent at least as of February 28, 2025, when Candela received HydraFacial's

Cease & Desist Letter. *See* **Ex. 18**. Defendants gained further knowledge of their infringement by way of this Complaint's filing and/or this Complaint's service upon Defendants.

45.    The acts of Defendants alleged herein constitute infringement of the '052 Patent under one or more subsections of 35 U.S.C. § 271.

46.    Defendants are liable for contributory infringement under 35 U.S.C. § 271(c) because, among other things, Defendants have offered for sale and/or sold, and continue to offer for sale and/or sell within the United States, and/or has imported and continues to import into the United States, the Accused Products constituting material parts of the invention of at least Claim 1 of the '052 Patent, that are not staple articles or commodities of commerce suitable for substantial non-infringing use.

47.    As a direct and proximate result of Defendants' infringement of the '052 Patent, Defendants have derived and received gains, profits, and advantages, while HydraFacial has suffered and will continue to suffer injury and damages. Therefore, HydraFacial is entitled to recover from Defendants, jointly and severally, the damages adequate to compensate for such infringement in an amount to be determined at trial, but in no event less than a reasonable royalty.

48.    Further, Defendants' acts of infringement of the '052 Patent alleged herein have been committed and are being committed with full knowledge of HydraFacial's rights in the '052 Patent. On information and belief, Defendants have acted and are continuing to act despite an objectively high likelihood that its actions constituted direct and/or indirect infringement of a valid patent, and Defendants knew or should have known of that objectively high risk—at the very latest, upon receiving notice from HydraFacial's February 28, 2025 Cease & Desist Letter. *See* **Ex. 18**. Thus, Defendants' acts constitute willful and deliberate infringement, entitling HydraFacial to enhanced damages under 35 U.S.C. § 284 and reasonable attorney's fees and costs.

49.     Defendants' acts of infringement of the '052 Patent have caused and will continue to cause irreparable harm to HydraFacial, for which there is no adequate remedy at law, entitling HydraFacial to injunctive relief.  Unless enjoined by this Court, Defendants will continue to infringe HydraFacial's patent rights and cause HydraFacial further irreparable harm.

## COUNT II
## Infringement of U.S. Patent No. 11,865,287

50.     HydraFacial incorporates by references and realleges the preceding paragraphs as if set forth fully herein.

51.     Defendants knowingly and intentionally infringed and continue to infringe the '287 Patent under 35 U.S.C. § 271(a) through, for example, the manufacture, use, sale, offer for sale, and/or importation into the United States of the Accused Products.

52.     For example, as set forth in the claim chart below, the Glacē system infringes at least Claim 1 of the '287 Patent.

| Claim Language | Accused Product |
|---|---|
| 1[pre]: A system for treating skin, the system comprising: | To the extent that the preamble is limiting, the Glacē is a system for performing a skin treatment procedure.<br><br>Candela has marketed the Glacē treatment as a "professional skin treatment" and "innovative skincare solution."  *See* **Ex. 6** at 1; *see also* **Ex. 7**, **9**. |
| 1[a]       a       console configured to receive a first container and at least one additional container; | The console of the Glacē is configured to receive a first container and at least one additional container, as shown in the image below: |

| Claim Language | Accused Product |
|---|---|
| | <br><br>*See* **Ex. 14** at 1. |
| 1[b]    a    handpiece configured    to    contact skin tissue of a subject; and | The Glacē handpiece is configured to contact skin tissue of a subject.  As shown in the image below, the Glacē handpiece is configured to contact skin tissue of a subject via a handpiece tip:<br><br>*See* **Ex. 14** at 1. |

| Claim Language | Accused Product |
|---|---|
| | <br><br>*See e.g.,* **Exs. 8**, **12**.<br><br>*See* **Ex. 6** at 2.<br><br>Moreover, Candela's Glacē webpage, under the section "How It Works," states the Glacē comprises a hydrodermabrasion handpiece with "diamond tips" that gently cleanse, exfoliate, and replenish skin with precision-engineered, single-use diamond tips. *Id.* |
| 1[c]: a block in the console, wherein the block is: | As shown in the image below, the Glacē console contains a block. |

| Claim Language | Accused Product |
|---|---|
| | <br><br>*See* **Ex. 14** at 2. |
| 1[c][i]: configured to selectively receive fluid from the first container when the first container is connected to the console; | The block of the Glacē is configured to selectively fluid from the first container when the first container is connected to the console. As shown in the photo below, the fluid container is coupled to the block of the Glacē:<br><br>*See* **Ex. 14** at 1. |

| Claim Language | Accused Product |
|---|---|
| | According to Candela's Glacē webpage, under the section "How It Works," the Glacē "integrates cutting-edge features that work together to achieve visible, transformative results," including "hydrodermabrasion with diamond tips" that "gently cleanses, exfoliates and replenishes the skin" and a "GlacēVac™ closed vacuum system" that allows for simultaneous extraction and suction to cleanse skin while infusing serums for radiant, glass-like clarity." **Ex. 6** at 1; *see e.g.*, **Exs. 7, 9, 12 & 13**. Because the first container couples to the block, and the fluid in the first container is delivered to the skin of a patient when coupled to the console, the block selectively receives fluid from the first container. |
| 1[c][ii]:  configured  to selectively receive fluid from  the  at  least  one additional        container when  the  at  least  one additional  container  is connected       to       the console; and | The block of the Glacē is configured to selectively receive fluid from at least one additional container when the at least one additional container is connected to the console.<br><br>As shown in the photo below, the Glacē includes at least one additional fluid container that is coupled to the block:<br><br><br><br>*See* **Ex. 14** at 1.<br><br>According to Candela's Glacē webpage, under the section "How It Works," the Glacē "integrates cutting-edge features that work together to achieve visible, transformative results," including "hydrodermabrasion with diamond tips" that "gently cleanses, exfoliates and replenishes the skin" and a "GlacēVac™ closed vacuum system" that allows for simultaneous extraction and suction to cleanse skin while infusing serums for radiant, glass-like clarity." *Id*; *see e.g.*, **Exs. 7, 9, 12 & 13**. Because the additional containers couple to the block, and the fluid in the additional containers are delivered to the skin of a patient when coupled |

| Claim Language | Accused Product |
|---|---|
|  | to the console, the block selectively receives fluid from the at least one additional container. |
| 1[c][iii]: configured to selectively be in fluid communication with the handpiece through a first conduit when the handpiece is connected to the console; | The block of the Glacē is configured to selectively be in fluid communication with the handpiece through a first conduit when the handpiece is connected to the console.<br><br>As shown in the image below, the Glacē comprises a tubing that includes a first conduit. The first conduit places the block of the console in fluid communication with the handpiece when the handpiece is connected to the console.<br><br><br><br>*See* **Ex.** 14 at 1. |

| Claim Language | Accused Product |
|---|---|
| [1][d]: a vacuum source, wherein the console comprises the vacuum source; and | The Glacē comprises a vacuum source.<br><br>According to Candela's Glacē webpage, the Glacē contains a "GlacēVac™ closed vacuum system" that allows for simultaneous extraction and suction to cleanse skin while infusing serums for radiant, glass-like clarity." *Id*; *see e.g.*, **Exs. 7, 9, 12 & 13.** |
| 1[e]: wherein the handpiece is configured to be in fluid communication with the vacuum source through a second conduit when the handpiece is connected to the console; | The Glacē handpiece is configured to be in fluid communication with the vacuum source through a second conduit when the handpiece is connected to the console.<br><br><br><br>*See e.g.,* **Exs. 8**, **12**.<br><br><br><br>*See* **Ex. 6** at 2.<br><br>Moreover, Candela's Glacē webpage, under the section "How It Works," states the Glacē comprises a hydrodermabrasion handpiece with "diamond tips" that gently cleanse, exfoliate, and replenish skin with |

| Claim Language | Accused Product |
|---|---|
|  | precision-engineered, single-use diamond tips. *Id.* As shown above, the Glacē handpiece tip is configured to contact a skin surface of a subject during a skin treatment procedure. |
| [1][f][i]: wherein when the handpiece, the first container, the at least one additional container and a waste container are each connected to the console, the first container contains a first treatment fluid, and the at least one additional container contains an additional treatment fluid, | The Glacē console has three fluid containers connected to the block, and thus has at least one additional container that comprises a second and third container such that the console is configured to receive at least three containers.<br><br><br><br>*See* **Ex. 14** at 1. |
| [1][f][ii]: the handpiece is in fluid communication with the vacuum source and the waste container through the second conduit; and | The Glacē handpiece is in fluid communication with the vacuum source and the waste container through the second conduit.<br><br>As shown in the photo below, the Glacē system has a waste conduit, e.g. a second conduit in the tubing. The waste conduit, e.g. the second conduit of the tubing, places the tip of the handpiece assembly in fluid communication with the vacuum source and waste container in the console.<br><br>*See* **Ex. 14** at 1. |

| Claim Language | Accused Product |
|---|---|
| |  |
| [1][f][iii]: the system is configured to deliver the first treatment fluid contained in the first container and the additional treatment fluid contained in the at least one additional container to the handpiece sequentially. | The Glacē system is configured to deliver the first treatment fluid contained in the first container and the additional treatment fluid contained in the at least one additional container to the handpiece sequentially.<br><br>Candela's website describes how the Glacē system delivers a two-phase serum treatment: Phase A which "cleanses, exfoliates, and extracts" and Phase B which "infuses, restores, and nourishes." **Ex. 6** at 1.<br><br>The Glacē system has selection buttons that allow the user to select which fluid from one of the first, second, third, and fourth fluid containers is being delivered to the handpiece, one at a time. |

| Claim Language | Accused Product |
|---|---|
| |  *See* **Ex. 12** (end-users selecting container icons). |

53. On information and belief, the deep2 system is identical to the Glacē system and infringes the '052 Patent in the same manner as the Glacē system. See Ex. 6 at 1 ("Glacē treatments [are] available with the deep2™ system"); **Ex. 15** (showing the Glacē system with a deep2 user interface and a TermoSalud logo).

54. On information and belief, Defendants make, import, offer for sale, and sell in the United States, and continue to do so, the Accused Products in a manner that infringes the '287 Patent, including for at least the reasons discussed above.

55. On information and belief, Defendants have also induced and/or are inducing the infringement of the '287 Patent by marketing, offering for sale, and selling the infringing Glacē system and the infringing deep2 system, and by continuing to market, offer for sale, and sell the infringing Glacē system and the infringing deep2 system. *See e.g.,* **Exs. 8-12**. The Accused Products—as provided by Defendants to their customers, end users, and others—and used as intended and instructed by Defendants, infringe the '287 Patent. Defendants evinced the specific intent for its customers, end users, and others to infringe the '287 Patent and actively induced their customer's infringing acts through Defendants' provision of marketing, product information, and instructional materials that encourage, demonstrate, and otherwise direct such infringement. *See id*. Further, customers, end users, and others have assembled and/or used the Accused Products in a manner that infringes the '287 Patent, and continue to do so. *See id.*

56. Defendants also had knowledge of the '287 Patent and that the Accused Products infringe the '287 Patent at least as of February 28, 2025, when Candela received HydraFacial's Cease & Desist Letter. *See* **Ex. 18**. Defendants gained further knowledge of their infringement by way of this Complaint's filing and/or this Complaint's service upon Defendants.

57.    The acts of Defendants alleged herein constitute infringement of the '287 Patent under one or more subsections of 35 U.S.C. § 271.

58.    Defendants are liable for contributory infringement under 35 U.S.C. § 271(c) because, among other things, Defendants have offered for sale and/or sold, and continues to offer for sale and/or sell within the United States, and/or has imported and continues to import into the United States, the Accused Products, constituting material parts of the invention of at least Claim 1 of the '287 Patent, that are not staple articles or commodities of commerce suitable for substantial non-infringing use.

59.    As a direct and proximate result of Defendants' infringement of the '287 Patent, Defendants have derived and received gains, profits, and advantages, while HydraFacial has suffered and will continue to suffer injury and damages.  Therefore, HydraFacial is entitled to recover from Defendants the damages adequate to compensate for such infringement in an amount to be determined at trial, but in no event less than a reasonable royalty.

60.    Further, Defendants' acts of infringement of the '287 Patent alleged herein have been committed and are being committed with full knowledge of HydraFacial's rights in the '287 Patent.  On information and belief, Defendants have acted and are continuing to act despite an objectively high likelihood that its actions constituted direct and/or indirect infringement of a valid patent, and Defendants knew or should have known of that objectively high risk—at the very latest, upon receiving notice from HydraFacial's February 28, 2025 Cease & Desist Letter.  *See* **Ex. 18**. Thus, Defendants' acts constitute willful and deliberate infringement, entitling HydraFacial to enhanced damages under 35 U.S.C. § 284 and reasonable attorney's fees and costs.

61.    Defendants' acts of infringement of the '287 Patent have caused and will continue to cause irreparable harm to HydraFacial, for which there is no adequate remedy at law, entitling

HydraFacial to injunctive relief.  Unless enjoined by this Court, Defendants will continue to infringe HydraFacial's patent rights and cause HydraFacial further irreparable harm.

**COUNT III**
**Infringement of U.S. Patent No. 11,446,477**

62.    HydraFacial incorporates by references and realleges the preceding paragraphs as if set forth fully herein.

63.    Defendants knowingly and intentionally infringed and continues to infringe the '477 Patent under 35 U.S.C. § 271(a) through, for example, the manufacture, use, sale, offer for sale, and/or importation into the United States of the Glacē system.

64.    For example, as set forth in the claim chart below, the Glacē system infringes at least Claim 1 of the '477 Patent.

| Claim Language | Accused Product |
|---|---|
| 1[pre]: A system for performing a skin treatment procedure, the system comprising: | To the extent that the preamble is limiting, the Glacē is a system for performing a skin treatment procedure.<br><br>Candela has marketed the Glacē treatment as a "professional skin treatment" and "innovative skincare solution." *See* **Ex. 6** at 1; *see also* **Ex. 7**, **9**. |
| 1[a][i]: a manifold system in communication with a first container and at least a second container, | The manifold system of the Glacē is in communication with a first container and at least a second container.<br><br>As shown in the photo below, the fluid containers couple to the manifold system of the Glacē:<br><br><br><br>*See* **Ex. 14** at 1.<br><br>According to Candela's Glacē webpage, under the section "How It Works," the Glacē "integrates cutting-edge features that work together to achieve visible, transformative results," including "hydrodermabrasion with diamond tips" that "gently cleanses, exfoliates and replenishes the skin" and a "GlacēVac™ closed vacuum system" that allows for simultaneous extraction and suction to cleanse skin while infusing serums for radiant, glass-like clarity." **Ex. 6** at 1; *see e.g.*, **Exs. 7**, **9**, **12**, **13**.<br><br>Because the fluid containers couple to the manifold, and the fluid in the containers is delivered to the skin of a patient when coupled to the console, the manifold is in fluid communication with a first fluid container and at least a second fluid container. |

| Claim Language | Accused Product |
|---|---|
| 1[a][ii]: wherein each of the first container and the at least second container is configured to contain a treatment material, | The first container and second container of the Glacē are configured to contain a treatment material for a skin treatment procedure.<br><br>Candela has stated that the Glacē contains "precision engineered single-use tips" for exfoliation that are used on conjunction with its "GlacēVac™ closed vacuum technology" which "enhances hydrodermabrasion by combining exfoliation with serum delivery." *See* **Ex. 6** at 1; *see also* **Exhibit 7** (describing the Glacē components generally). |
| 1[a][iii]: the manifold system being positioned in or on a console; | As shown in the image below, the Glacē manifold is positioned in or on a console.<br><br><br><br>*See* **Ex. 14** at 1. |

| Claim Language | Accused Product |
|---|---|
| 1[b]: a supply conduit placing the manifold system in fluid communication with a handpiece assembly; | As shown in the image below, the Glacē comprises a tubing that includes a first conduit. The first conduit places the block of the console in fluid communication with the handpiece when the handpiece is connected to the console.<br><br><br><br>*See* **Ex. 14** at 1.<br><br>The supply conduit, e.g. the first conduit of the tubing, is in fluid communication with the manifold via a coupling to the console show below, and the supply conduit also couples to the handpiece assembly: |
| 1[c]: wherein the handpiece assembly comprises a working end having a skin contact surface; | As shown in the image below, the Glacē handpiece assembly comprises a working end having a skin contact surface.<br><br>The Glacē handpiece has a tip attached that is configured to contact a skin surface of a subject, as shown below. |

| Claim Language | Accused Product |
|---|---|
| | <br><br>*See e.g.,* **Exs. 8, 12**.<br><br>*See* **Ex. 6** at 2.<br><br>Moreover, Candela's Glacē webpage, under the section "How It Works," states the Glacē comprises a hydrodermabrasion handpiece with "diamond tips" that gently cleanse, exfoliate, and replenish skin with precision-engineered, single-use diamond tips. *Id.* at |
| 1[d]: a vacuum source; | The Glacē comprises a vacuum source.<br><br>According to Candela's Glacē webpage, the Glacē contains a "GlacēVac™ closed vacuum system" that allows for simultaneous extraction and suction to cleanse skin while infusing serums for radiant, glass-like clarity." **Ex. 6** at 1; *see e.g.*, **Exs. 7, 9, 12 & 13**. |
| 1[e]: a waste conduit in fluid communication with the tip of the handpiece assembly to | The Glacē waste conduit, *e.g.* the second conduit in the tubing, is in fluid communication with the handpiece assembly and the vacuum source to move waste away from the working end of the handpiece assembly during a skin treatment procedure. |

| Claim Language | Accused Product |
|---|---|
| remove waste away from a skin surface of a subject during a skin treatment procedure, wherein the waste conduit is operatively coupled to the vacuum source; and |  *See* **Ex. 14** at 1.<br><br>According to Candela's Glacē webpage, under the section "How It Works," the Glacē "integrates cutting-edge features that work together to achieve visible, transformative results," including "hydrodermabrasion with diamond tips" that "gently cleanses, exfoliates and replenishes the skin" and a "GlacēVac™ closed vacuum system" that allows for simultaneous extraction and suction to cleanse skin while infusing serums for radiant, glass-like clarity." **Ex. 6** at 1; *see e.g.*, **Exs. 7, 9, 12 & 13**. Because the handpiece assembly supplies treatment fluid to the skin, and vacuum suction is used to cleanse the skin with the handpiece assembly during a treatment procedure with the Glacē, the handpiece is in fluid connection with the vacuum source through a waste conduit to move waste away from the working end of the handpiece. |
| 1[f]: at least one control to permit control of a flow of treatment material from the first container and the at least second container through the supply conduit to the handpiece assembly; | As shown in the images below, the Glacē is configured to have at least one control to permit control of a flow of treatment material from the first container and the at least second container through the supply conduit to the handpiece assembly. |

| Claim Language | Accused Product |
|---|---|
| | <br><br>*See* **Ex. 12** at 00:12. |
| 1[g]: wherein the vacuum source is configured to create a suction force within the waste conduit and along the working end of the handpiece assembly to help remove waste from the handpiece assembly via the waste conduit and to help transfer at least one treatment material from the manifold system to the handpiece assembly. | The Glacē vacuum source is configured to create a suction force within the waste conduit along the working end of the handpiece assembly via the waste conduit and to help transfer at least one treatment material from the manifold system to the handpiece assembly.<br><br>According to Candela's Glacē webpage, under the section "How It Works," the Glacē "integrates cutting-edge features that work together to achieve visible, transformative results," including "hydrodermabrasion with diamond tips" that "gently cleanses, exfoliates and replenishes the skin" and a "GlacēVac™ closed vacuum system" that allows for simultaneous extraction and suction to cleanse skin while infusing serums for radiant, glass-like clarity." **Ex. 6** at 1; *see e.g.*, **Exs. 7, 9, 12 & 13**.<br><br>As shown below, the working end of the handpiece assembly has a skin contact surface that contacts skin during operation: |

| Claim Language | Accused Product |
|---|---|
| |  *See e.g.,* **Exs. 8**, **12**. *See* **Ex. 6** at 2. |

65. On information and belief, the deep2 system is identical to the to the Glacē system and infringes the '477 Patent in the same manner as the Glacē system. *See* **Ex. 6** at 1 ("Glacē treatments [are] available with the deep2™ system"); **Ex. 15** (showing the Glacē system with a deep2 user interface and a TermoSalud logo).

66. On information and belief, Defendants make, import, offer for sale and sell in the United States, and continues to do so, the Accused Products in a manner that infringes the '477 Patent, including for at least the reasons discussed above.

67. On information and belief, Defendants have also induced and/or are inducing the infringement of the '477 Patent by marketing, offering for sale, and selling the infringing Glacē system and the infringing deep2 system, and by continuing to make, import, offer for sale, and sell the infringing Glacē system and the infringing deep2 system. *See e.g.,* **Exs. 8-12, 14**. The Accused Products—as provided by Defendants to their customers, end users, and others—and used as intended and instructed by Defendants, infringes the '477 Patent. Defendants evinced the specific intent for their customers, end users, and others to infringe the '477 Patent and actively induced their customers' infringing acts through its provision of marketing, product information, and instructional materials that encourage, demonstrate, and otherwise direct such infringement. *See id*. Further, customers, end users, and others have assembled and/or used the Accused Products in a manner that infringes the '477 Patent and continue to do so. *See id*.

68. Defendants also had knowledge of the '477 Patent and that the Accused Products infringe the '477 Patent at least as of February 28, 2025, when Candela received HydraFacial's Cease & Desist Letter. *See* **Ex. 18**. Defendants gained further knowledge of its infringement by way of this Complaint's filing and/or this Complaint's service upon Defendants.

69.    The acts of Defendants alleged herein constitute infringement of the '477 Patent under one or more subsections of 35 U.S.C. § 271.

70.    Defendants are liable for contributory infringement under 35 U.S.C. § 271(c) because, among other things, Defendants have offered for sale and/or sold, and continues to offer for sale and/or sell within the United States, and/or has imported and continues to import into the United States, the Accused Products constituting material parts of the invention of at least Claim 1 of the '477 Patent, that are not staple articles or commodities of commerce suitable for substantial non-infringing use.

71.    As a direct and proximate result of Defendants' infringement of the '477 Patent, Defendants have derived and received gains, profits, and advantages, while HydraFacial has suffered and will continue to suffer injury and damages.  Therefore, HydraFacial is entitled to recover from Defendants, jointly and severally, the damages adequate to compensate for such infringement in an amount to be determined at trial, but in no event less than a reasonable royalty.

72.    Further, Defendants' acts of infringement of the '477 Patent alleged herein have been committed and are being committed with full knowledge of HydraFacial's rights in the '477 Patent.  On information and belief, Defendants have acted and are continuing to act despite an objectively high likelihood that its actions constituted direct and/or indirect infringement of a valid patent, and Defendants knew or should have known of that objectively high risk—at the very latest, upon receiving notice from HydraFacial's February 28, 2025 Cease & Desist Letter.  Thus, Defendants' acts constitute willful and deliberate infringement, entitling HydraFacial to enhanced damages under 35 U.S.C. § 284 and reasonable attorney's fees and costs.

73.    Defendants' acts of infringement of the '477 Patent have caused and will continue to cause irreparable harm to HydraFacial, for which there is no adequate remedy at law, entitling

HydraFacial to injunctive relief.  Unless enjoined by this Court, Defendants will continue to infringe HydraFacial's patent rights and cause HydraFacial further irreparable harm.

**COUNT IV**
**Infringement of U.S. Patent No. 12,053,607**

74.    HydraFacial incorporates by references and realleges the preceding paragraphs as if set forth fully herein.

75.    Defendants knowingly and intentionally infringed and continues to infringe the '607 Patent under 35 U.S.C. § 271(a) through, for example, the manufacture, use, sale, offer for sale, and/or importation into the United States of the Accused Products.

76.    For example, as set forth in the claim chart below, the Glacē system infringes at least Claim 1 of the '607 Patent.

| Claim Language | Accused Product |
|---|---|
| 1[pre]: A skin treatment system, comprising: | To the extent that the preamble is limiting, the Glacē is a system for performing a skin treatment procedure.<br><br>Candela has marketed the Glacē treatment as a "professional skin treatment" and "innovative skincare solution."  *See* **Ex. 6** at 1; *see also* **Exs. 7**, **9**. |
| 1[a]: a console configured to receive a first container containing a first treatment material and a second container containing a second treatment material; | The console of the Glacē is configured to receive a first container containing a first treatment material and a second container containing a second treatment material. |

| Claim Language | Accused Product |
|---|---|
| | <br>*See* **Ex. 14** at 1. |
| 1[b][i]: a handpiece configured to couple to a tip that can be pressed against skin to perform skin treatment; | The Glacē handpiece is configured to couple to a tip that can be pressed against skin to perform skin treatment.<br>The Glacē handpiece has a tip attached that is configured to contact a skin surface of a subject, as shown below.<br><br>*See e.g.,* **Exs. 8**, **12**. |

| Claim Language | Accused Product |
|---|---|
| |  *See* **Ex. 6** at 2. Moreover, Candela's Glacē webpage, under the section "How It Works," states the Glacē comprises a hydrodermabrasion handpiece with "diamond tips" that gently cleanse, exfoliate, and replenish skin with precision-engineered, single-use diamond tips. *Id*. |
| 1[b][ii]: a supply line connected between the handpiece and the console for sequentially delivering treatment material to the handpiece from the first container or the second container; | The Glacē comprises a supply line connected between the handpiece and the console for sequentially delivering treatment material to the handpiece from the first container or the second container. *See* **Ex. 14** at 1. The supply conduit, *e.g.,* the first supply conduit of the tubing, is in fluid communication with the manifold via a coupling to the console show below, and the supply conduit also couples to the handpiece assembly. |

| Claim Language | Accused Product |
|---|---|
| | |
| 1[c]: a waste line connected between the handpiece and the console; and | The Glacē comprises a waste line connected between the handpiece and the console.<br><br>As shown in the photo below, the Glacē system has a waste line, *e.g.* the second conduit in the tubing, connected between the handpiece and the console.<br><br><br><br>*See* **Ex. 14** at 1. |
| 1[d]: a vacuum source configured to create a vacuum that draws waste material from the handpiece through the waste line for disposal and that draws treatment material from either the first container or the second container to the handpiece when the tip is pressed against skin. | The Glacē comprises a vacuum source configured to create a vacuum that draws waste material from the handpiece through the waste line for disposal and that draws treatment material from either the first container or the second container to the handpiece when the tip is pressed against skin.<br><br>According to Candela's Glacē webpage, under the section "How It Works," the Glacē "integrates cutting-edge features that work together to achieve visible, transformative results," including "hydrodermabrasion with diamond tips" that "gently cleanses, exfoliates and replenishes the skin" and a "GlacēVac™ closed vacuum system" that allows for simultaneous extraction and suction to cleanse skin while infusing serums for radiant, glass-like clarity." **Ex. 6** at 1; *see e.g.*, **Exs. 7, 9, 12-14**. As described above, while Glacē's vacuum source draws, or extracts, waste material from the handpiece through the waste conduit, it simultaneously draws treatment material from either the first or second container to the handpiece to deliver to the skin when its handpiece is pressed against the skin surface. |

77.    On information and belief, the deep2 system is identical to the Glacē system and infringes the '607 Patent in the same manner as the Glacē system. *See* **Ex. 6** at 1 ("Glacē treatments [are] available with the deep2™ system"); **Ex. 15** (showing the Glacē system with a deep2 user interface and a TermoSalud logo).

78.    On information and belief, Defendants make, import, offer for sale, and sell in the United States, and continues to do so, the Accused Products in a manner that infringes the '607 Patent, including for at least the reasons discussed above.

79.    On information and belief, Defendants have also induced and/or are inducing the infringement of the '607 Patent by marketing, offering for sale, and selling the infringing Glacē system and the infringing deep2 system, and by continuing to market, offer for sale, and sell the infringing Glacē system and the infringing deep2 system. *See e.g.,* **Exs. 8-12, 14**.  The Accused Products—as provided by Defendants to their customers, end users, and others—and used as intended and instructed by Defendants, infringes the '607 Patent.  Defendants evinced the specific intent for their customers, end users, and others to infringe the '607 Patent and actively induced their customers' infringing acts through Defendants' provision of marketing, product information, and instructional materials that encourage, demonstrate, and otherwise direct such infringement. *See id*.  Further, customers, end users, and others have assembled and/or used the Accused Products in a manner that infringes the '607 Patent and continue to do so.  *See id*.

80.    Defendants also had knowledge of the '607 Patent and that the Accused Products infringes the '607 Patent at least as of February 28, 2025, when Candela received HydraFacial's Cease & Desist Letter.  *See* **Ex. 18**.  Defendants gained further knowledge of their infringement by way of this Complaint's filing and/or this Complaint's service upon Defendants.

81.     The acts of Defendants alleged herein constitute infringement of the '607 Patent under one or more subsections of 35 U.S.C. § 271.

82.     Defendants are liable for contributory infringement under 35 U.S.C. § 271(c) because, among other things, Defendants have offered for sale and/or sold, and continues to offer for sale and/or sell within the United States, and/or has imported and continues to import into the United States, the Accused Products constituting material parts of the invention of at least Claim 1 of the '607 Patent, that are not staple articles or commodities of commerce suitable for substantial non-infringing use.

83.     As a direct and proximate result of Defendants' infringement of the '607 Patent, Defendants have derived and received gains, profits, and advantages, while HydraFacial has suffered and will continue to suffer injury and damages.  Therefore, HydraFacial is entitled to recover from Defendants, jointly and severally, the damages adequate to compensate for such infringement in an amount to be determined at trial, but in no event less than a reasonable royalty.

84.     Further, Defendants' acts of infringement of the '607 Patent alleged herein have been committed and are being committed with full knowledge of HydraFacial's rights in the '607 Patent.  On information and belief, Defendants have acted and is continuing to act despite an objectively high likelihood that its actions constituted direct and/or indirect infringement of a valid patent, and Defendants knew or should have known of that objectively high risk—at the very latest, upon receiving notice from HydraFacial's February 28, 2025 Cease & Desist Letter.  *See* **Ex. 18**. Thus, Defendants' acts constitute willful and deliberate infringement, entitling HydraFacial to enhanced damages under 35 U.S.C. § 284 and reasonable attorney's fees and costs.

85.     Defendants' acts of infringement of the '607 Patent have caused and will continue to cause irreparable harm to HydraFacial, for which there is no adequate remedy at law, entitling

HydraFacial to injunctive relief. Unless enjoined by this Court, Defendants will continue to infringe HydraFacial's patent rights and cause HydraFacial further irreparable harm.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff HydraFacial LLC prays for judgment and seeks relief as follows:

1.      A judgment in favor of HydraFacial and against Defendants on all claims alleged herein;

2.      A judgment that Defendants have infringed and continue to infringe the Asserted Patents under 35 U.S.C. § 271;

3.      A preliminary and permanent injunction enjoining Defendants, their officers, directors, agents, servants, employees, and attorneys, and those persons in active concert or participation with Defendants, from (1) making, using, selling, offering to sell, and/or importing into the United States the Glacē system and the deep2 system, or inducing others to use them in an infringing manner; and (2) infringing the Asserted Patents in violation of 35 U.S.C. § 271;

4.      An accounting of all Defendants' gains, profits, and advantages derived from its infringement of the Asserted Patents in violation of 35 U.S.C. § 271;

5.      An order that Defendants, jointly and severally, pay to HydraFacial actual damages in the form of lost profits, or in the alternative, other damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the patented inventions by Defendants, in accordance with 35 U.S.C. § 284;

6.      An order trebling or otherwise increasing damages pursuant to 35 U.S.C. § 284 because of Defendants' willful infringement;

7.      An order finding this case exceptional under 35 U.S.C. § 285, and requiring Defendants to pay HydraFacial its reasonable attorney fees incurred in this action;

8. Pre-judgment and post-judgment interest and costs as fixed by the Court; and

9. Award to HydraFacial such other and further legal or equitable relief as this Court may deem just and proper.

### DEMAND FOR JURY TRIAL

Plaintiff HydraFacial LLC hereby demands a trial by jury for all issues so triable.

Dated: April 3, 2025

Respectfully Submitted,

**MORGAN, LEWIS & BOCKIUS LLP**

By: */s/ Amy M. Dudash*

Amy M. Dudash (DE Bar No. 5741)
Morgan, Lewis & Bockius LLP
1201 N. Market Street, Suite 2201
Wilmington, Delaware 19801
amy.dudash@morganlewis.com
Telephone: 302.574.3000
Fax: 302.574.3001

Benjamin Everton*
ben.everton@morganlewis.com
Zachary Messick*
zachary.messick@morganlewis.com
600 Anton Boulevard, Suite 1800
Costa Mesa, CA 92626-7653
Telephone: (714) 830-0600
Facsimile: (714) 830-0700

Liya K. Levin*
110 North Wacker Drive, Suite 2800
Chicago, IL 60606
liya.levin@morganlewis.com
Telephone: 312.324.1000
Facsimile: 312.324.1001

**pro hac vice* application forthcoming

*Attorneys for Plaintiff HydraFacial LLC*